399 So.2d 19 (1981)
Matthew Leo FAISON, a/K/a Leo Jackson, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-2250.
District Court of Appeal of Florida, Third District.
May 19, 1981.
*20 Bennett H. Brummer, Public Defender and John H. Lipinski, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Calianne P. Lantz, Asst. Atty. Gen., for appellee.
Before BARKDULL, SCHWARTZ and DANIEL S. PEARSON, JJ.
SCHWARTZ, Judge.
Faison appeals from his multiple convictions for offenses committed during the course of separate sexual attacks on two women which occurred within a few minutes of each other. In the first incident, the defendant dragged a receptionist from the front of her office  which faced the street through a large glass window  first to the rear of the room, where he raped her, and then into the restroom, where he did so again. Shortly thereafter, while attempting to evade the pursuit of the employer of that victim, Faison entered through the back door into the kitchen of a nearby private home. After asking the lady of the house, who was seated there, for a drink of water, he grabbed and forcibly removed her from the kitchen to a rear bedroom, where he raped that woman as well.
Faison's most substantial argument challenges his convictions of two counts of kidnapping. Faison was found guilty of these crimes on the ground that he had "forcibly ... abduct[ed] [each victim] against h[er] will ... with intent to ... [c]ommit or facilitate [the] commission of [the] felony" of sexual battery. Section 787.01(1)(a)2, Florida Statutes (1979).[1] Relying on language in Harkins v. State, 380 So.2d 524 (Fla. 5th DCA 1980) and the holdings in Friend v. State, 385 So.2d 696 (Fla. 1st DCA 1980) and Simpkins v. State, 395 So.2d 625 (Fla. 1st DCA 1981), Faison contends that the short movements of his victims were both merely "incidental" to and had no "independent significance" from the sexual batteries themselves and therefore could not constitute the separate crimes of kidnapping. We disagree. Even assuming, arguendo, the validity of these cases' interpretation of the Florida statute,[2] we conclude *21 that the facts relative to each of the abductions involved here qualify as kidnappings under that view.
The Harkins case explicitly  and the other cited decisions reflect the same conclusion  adopts the holding of State v. Buggs, 219 Kan. 203, 547 P.2d 720 (1976) as reflective of the Florida law on the issue before us. In Buggs, the court stated its holding as follows at 547 P.2d 731:
[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
Each of the separate episodes involved in this case conforms with these requirements.
(a) The movements of both victims were effected by substantial force and violence inflicted by Faison to overcome their resistance and to make them to go where he wanted. It cannot be said, therefore, that the asportations were either slight, inconsequential or merely incidental to the sexual batteries which followed.
(b) These movements were not inherent or necessarily required in the commission of the sexual batteries, which could have been accomplished on the spot without any asportation whatever. See, e.g., State v. Williams, 111 Ariz. 222, 526 P.2d 1244 (1974); Wilson v. State, 253 Ind. 585, 255 N.E.2d 817 (1970).[3]
(c) Both abductions were from an area where the rape could have been more easily observed through a window  in the first victim's office, and the second one's kitchen  to the "relative seclusion," State v. Buggs, supra, at 547 P.2d 731, of the rear and restroom of the office and the bedroom of the home, respectively. Moreover, each asportation removed the victim from access to a door  again, in the office and in the kitchen  through which she might have escaped. Hence, each made the sexual battery *22 substantially easier to commit and substantially reduced the danger of detection. Compare, Simpkins v. State, supra (mere forced movement from bedroom to living room to accomplish sexual battery not kidnapping). The fact that relatively short distances were involved makes no difference. Our conclusions to this effect and that each set of Faison's acts was indeed a kidnapping, are supported by the Buggs case itself, which holds:
Applying the principles above to our present case, we hold that the conduct of the defendants constituted kidnapping under our statute. The Penners were accosted outside the Dairy Queen, at the fringe of the parking lot, where they were subject to public view. Mrs. Penner had the day's receipts with her, and the robbery could have been accomplished then and there. If the money was inside, the defendants could have gone in after it without taking the Penners with them. Instead, the defendants forced the Penners to return to the relative seclusion of the inside of the store. That movement, slight though it was, substantially reduced the risk of detection not only of the robbery but of the rape. Except in the matter of distance, which we are holding to be irrelevant, it was as if the defendants had seized the Penners at home and forced them to return to the store before the robbery and rape. There was, in our view, a taking and confinement to `facilitate' the commission of the robbery and rape. [e.s.]
547 P.2d 731-732. See, generally, Annot., Kidnapping  Asportation for Other Crime, 43 A.L.R.3d 699 (1972), and cases collected at 709-712, and 1980 supplement at 39-40. See also, Harkins v. State, supra (tying rape-murder victim to bed kidnapping); Ayendes v. State, 385 So.2d 698 (Fla. 1st DCA 1980) (confinement in victim's own home in attempt to aid defendant's escape from prison kidnapping); compare, Friend v. State, supra; Simpkins v. State, supra.
The other points raised by the defendant present no error,[4] with one exception. In the second incident, Faison was convicted of both first degree burglary  that is, burglary of the victim's home and making an assault upon her within, a life felony under Section 810.02(2)(a)  and the same sexual battery which constituted the assault involved in the burglary charge. On the authority of McRae v. State, 383 So.2d 289, 293 (Fla.2d DCA 1980), which so determined the identical question, we hold that, under State v. Pinder, 375 So.2d 836 (Fla. 1979),[5] the sexual battery conviction cannot stand. While Faison was not sentenced on the latter charge, Hegstrom v. State, 388 So.2d 1308 (Fla.3d DCA 1980), review granted, Fla. Case no. 59,893 (1981), requires that the adjudication for that offense be set aside. Accord, e.g., Jenrette v. State, 390 So.2d 781 (Fla.3d DCA 1980).
For these reasons, the adjudication of guilt of sexual battery as alleged in Count VI of the information is vacated. The judgment below is otherwise entirely
Affirmed.
NOTES
[1] Kidnapping
(1)(a) `Kidnapping' means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority, with intent to:
1. Hold for ransom or reward or as a shield or hostage.
2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
4. Interfere with the performance of any governmental or political function.
[2] We emphasize that, since the more stringent criteria of these cases are satisfied by the present facts, we are not required to pass upon the correctness of the determinations in Harkins, Friend and Simpkins that a forcible asportation or detention of the victim with the intent to commit a felony is insufficient, without more, to establish the independent crime of kidnapping. Hence, this opinion is not to be taken as an endorsement of that conclusion.

It should be pointed out that, although the holding to this effect in State v. Buggs, 219 Kan. 203, 547 P.2d 720 (1976) was adopted by Harkins and Friend as a proper interpretation of the Florida law, our statute is significantly broader than the one involved in Buggs. As the Harkins opinion noted, at 380 So.2d 528, but did not consider decisive, the present Kansas statute requires an abduction or confinement with the intent to "facilitate flight or the commission of any crime." K.S.A. 21-3420(b). § 787.01(1)(a)2, on the other hand, requires an intent either to "commit or facilitate commission of any felony." [e.s.] Under statutes like ours, it has been widely held, apparently by a majority of the jurisdictions which have considered the question, that it is the fact of any forcible movement or confinement with the forbidden felonious intent  regardless of its length, distance or purpose  which constitutes kidnapping. E.g., State v. Williams, 111 Ariz. 222, 526 P.2d 1244, 1246 (1974) ("That the victim was forced to move from one room to another in defendant's house, a small distance of asportation as opposed to being moved miles away, is not a dispositive fact."); State v. Morris, 281 Minn. 119, 160 N.W.2d 715 (1968); cases collected, Annot., Kidnapping-Asportation for Other Crime, 43 A.L.R.3d 699, 702 (1972), and 1980 supplement at 35. Indeed, that was the law in Kansas itself under the prior version of its statute, which was much more akin to Florida's than the amended version treated in Buggs. State v. Ayers, 198 Kan. 467, 426 P.2d 21 (1967) (rape victim forcibly moved 11 feet; kidnapping conviction affirmed). The Harkins-Friend-Simpkins view of our statute is also called into question by Sec. 775.021(4), Fla. Stat. (1979), which provides that "[w]hoever, in the course of one criminal transaction or episode, commits an act or acts constituting a violation of two or more criminal statutes, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense, excluding lesser included offenses, committed during said criminal episode... ."
Finally, we specifically express our grave doubts about the wisdom of the statement in Buggs, quoted in Harkins, and apparently adopted in Simpkins that "[t]he removal of a rape victim from room to room within a dwelling solely for the convenience of the rapist is not a kidnapping." We are not nearly so willing to accommodate the "convenience" of a rapist or any other criminal by excusing any additional offense he may commit in order to indulge his personal tastes and predilections. The language of Wilson v. State, 253 Ind. 585, 255 N.E.2d 817, 821 22 (1970) is compelling in this regard:
Appellant suggests that this court adopt a principle whereby any restraint and transportation of the victim would be considered only as an integral part of the charge of rape and not as a separate charge of kidnapping. In other words, that because the rape in this case also included a kidnapping or transportation under restraint he should not be prosecuted separately for that crime. Carrying the argument further it seems the victim was not carried very far to constitute a real kidnapping and it was merely incidental to the rape. Of course, the argument fails because a transportation or kidnapping is not necessarily involved in a rape... . We do not approve any principle which exempts one from prosecution from all the crimes he commits because he sees fit to compound or multiply them. Such a principle would encourage the compounding and viciousness of the criminal acts.
[3] We regard only the confinement and slight movement involved in the force asserted by the offender against the body of the victim in the commission of the act itself to be "inherent in the nature" of a rape or sexual battery. But cf., Simpkins v. State, supra.
[4] See State v. Register, 380 So.2d 543 (Fla. 5th DCA 1980); Sec. 810.02, Fla. Stat. (1979).
[5] As in Damon v. State, 397 So.2d 1224 (Fla.3d DCA 1981), note 9, and Monroe v. State, 396 So.2d 241 (Fla.3d DCA 1981), we point out the possibility that Pinder has been undermined by the later decisions of Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1932, 63 L.Ed.2d 715 (1980) and Albernaz v. United States, 350 U.S. ___, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).